UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PAUL JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SANTA ROSA, et al.,<br><br>Defendants. | Case No. 23-cv-02478-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 62 |

Plaintiff alleges Defendants City of Santa Rosa, Officer Sousa, Officer O'Neill, and Sargent De Leon (collectively, "Defendants") violated his Fourth Amendment Rights. (Dkt. No. 21.)[1] Now pending before the Court is Defendants' Motion for Summary Judgment, Or, in the Alternative, Summary Adjudication. (Dkt. No. 62.) After carefully considering the parties' written submissions, and having had the benefit of oral argument on November 14, 2024, the Court GRANTS Defendants' motion as to all claims against Sargent De Leon and all claims against Officer Sousa regarding Plaintiff's broken elbow, and DENIES the motion as to the remaining causes of action.

**BACKGROUND**

**I.    Factual Background**

In the years preceding Plaintiff's arrest underlying this action, Plaintiff was the subject of many Santa Rosa Police Department ("SRPD") Officer Safety Bulletins. (Dkt. No. 62-1.) The SRPD issues these bulletins "to document and communicate and disseminate officer safety concerns, and they are circulated and made available to SRPD Officers for their information and

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

safety." (Dkt. No. 62-1 ¶ 3; Dkt. No. 62-3 at 18.)  The first of these bulletins was issued on September 6, 2018, and noted Plaintiff "is not wanted for any crimes" but Plaintiff had previously made "threats" and was known to experience "paranoia," to where he had even said, "he will make police shoot him." (Dkt. No. 62-1 at 4.)  Another bulletin disseminated in November of 2018 highlighted Plaintiff's repeated phone calls to SRPD and the Department's assessment that he "appears to be unstable and is extremely threatening." (*Id.* at 7.)  Pursuant to these bulletins, Sargent De Leon conducted a number of threat assessments on Plaintiff in 2018 and ultimately determined no further action was recommended. (Dkt. No. 62-4 at 13.)

In the months and weeks leading up the incident, Plaintiff's name and photograph came up regularly in SRPD briefings because he had "been making vague threats towards officers and dispatch" and "had called SRPD dispatch numerous times within the last couple months." (Dkt. No. 63 at 12; *id.* at 19-20; Dkt. No. 62-3 at 12.)  These phone calls had resulted in Officer Sousa authoring a police report on March 8, 2022—14 days before the arrest—requesting charges for annoying/harassing calls to 911. (Dkt. No. 63 at 12.)  Additionally, SRPD officers were discussing Plaintiff at briefings because he had "at least four active Stop and Holds" for violating a restraining order. (*Id.*)  "[A] stop and hold essentially functions like a local warrant.  If somebody commits a crime such as a restraining order violation, a report is taken, and then every briefing there's a form that's passed around, so each officer is familiar with who is wanted for different crimes." (*Id.* at 19-20.)  Prior to the incident, Officer Sousa "was aware [] that [Plaintiff] suffered from mental health issues." (*Id.* at 21.)  And Officer O'Neill was aware of Plaintiff from bulletins and briefings and attested that it was previously discussed at these same briefings that Plaintiff likely suffered from mental illness. (Dkt. No. 62-3 at 18-19.)

On March 23, 2022, Officer Sousa was searching for Plaintiff, and had been "for the last several shifts," because Plaintiff "ha[d] been a constant nuisance and ha[d] been a significant drain on the resources of the entire police department." (Dkt. No. 63 at 12.)  He had reached out to Plaintiff's neighbors and discovered Plaintiff was driving a Chevrolet Trailblazer, which Officer Sousa subsequently found unoccupied on Cactus Street in Santa Rosa that same day. (*Id.*)  Later that day, Officer Sousa was driving northbound on South E Street in Santa Rosa when he saw

1   what he recognized as Plaintiff's Trailblazer parked in front of Sam's Market.  (*Id.*)  Officer Sousa
2   proceeded to park behind the Trailblazer and notify dispatch of the stop.  (Dkt. No. 63 at 4 at 0:00-
3   30.)  As Plaintiff entered Sam's Market, Officer Sousa began ordering him to sit down.  (*Id.* at 30-
4   33.)  Plaintiff asked Officer Sousa whether he was being placed under arrest and then asked why.
5   (*Id.* at 0:33-45.)  When Officer Sousa confirmed to him that he was under arrest, Plaintiff spoke to
6   the person at the counter and made certain remarks about being kidnapped.  (*Id.* at 0:45-1:02.)
7   Officer Sousa asked Plaintiff to step outside of Sam's Market so that he could place him in
8   handcuffs and Plaintiff began to walk out.  (*Id.* at 1:02-1:11.)  Officer Sousa began walking
9   backwards and putting on latex gloves when Plaintiff suddenly ran out of the store.  (*Id.* at 1:12-
10  14.)

11  It was at this point Officer O'Neill saw Plaintiff running.  Officer O'Neill was on patrol
12  and was driving towards Plaintiff's location when he received Officer Sousa's dispatch.  (Dkt. No.
13  62-3 at 21-23.)  Officer Sousa chased Plaintiff and a few seconds later, Plaintiff knelt down and
14  proceeded to lay on his stomach with his hands behind his back.  (Dkt. No. 63 at 4 at 1:12-1:32.)
15  Officer Sousa proceeded to put handcuffs on Plaintiff and Plaintiff did not move away, though
16  Officer Sousa later attested that Plaintiff appeared "as being under the influence of drugs" and
17  "[a]ll of his muscles appeared to be clenched, twitching erratically, he was yelling, sweating
18  profusely."  (*Id.*; Dkt. No. 63 at 21.)  Officer O'Neill testified that when he arrived at the scene
19  and got out of his car, "[he] did not see any active resistance."  (Dkt. No. 65-2 at 18.)

20  While Officer Sousa was on top of Plaintiff with one handcuff on his left hand, Officer
21  O'Neill arrived, moved quickly towards Plaintiff, and proceeded to kneel on Plaintiff and place his
22  right arm in a "twist lock."  (Dkt. No. 62-3 at 4 at 0:59-1:04; *see also* 62-3 at 25 ("I grabbed ahold
23  of Mr. Johnson's right arm, applied a twist lock to gain control …").)  In Officer O'Neill's body
24  camera footage, this action made an audible crunching sound.  (Dkt. No. 62-2 at 4 at 1:04-1:05.)
25  Officer Sousa attested he "heard what sounded like a crack," but did not "know what exactly that
26  noise is."  (Dkt. No. 65-2 at 7.)  Officer O'Neill testified he heard a "pop" that "sounded like
27  arthritis, like [he] had popped [his] knuckles."  (Dkt. No. 62-3 at 19.)

28  Plaintiff began screaming in pain, eventually crying out to the officers, telling them that

United States District Court
Northern District of California

they broke his elbow. (Dkt. No. 63 at 4 at 1:32-1:53.) Officer O'Neill at this point believed he may have injured Plaintiff. (Dkt. No. 62-3 at 20.) The officers proceeded to lay Plaintiff on his back, and then on his side and, while he was in handcuffs, searched Plaintiff. (Dkt. No. 63 at 4 at 1:35-4:43.) Officer Sousa then called an ambulance to the scene and Plaintiff was taken to the hospital, where doctors told him he had suffered a "radial head fracture" to his right elbow and told him to wear a sling. (Dkt. No. 63 at 13.)

## II.     Procedural Background

Plaintiff filed the present action in 2023, alleging Defendants violated his constitutional rights by using excessive force and committing an unlawful arrest. (Dkt. No. 1.) Defendants moved to dismiss Plaintiff's complaint but withdrew their motion after Plaintiff filed an amended complaint. (Dkt. Nos. 18, 21, 22.) Plaintiff has since voluntarily dismissed his false arrest causes of action. (Dkt. No. 59.) Defendants now move for summary judgment of all remaining causes of action. (Dkt. No. 62.) In his opposition Plaintiff voluntarily dismissed his claims against Sargent De Leon. (Dkt. No. 65.) The only remaining causes of action against Officers O'Neill and Sousa are: (1) § 1983 claim for use of excessive force; (2) California battery claim; (3) Bane Act claim; and (4) Negligence. (Dkt. No. 21.) Plaintiff also maintains his state law causes of action against the City of Santa Rosa pursuant to California Government Code § 815.2. (Dkt. No. 21.)[2] Plaintiff seeks punitive damages in addition to other forms of relief. (*Id.*)

## DISCUSSION

Plaintiffs' claims are divisible by the two injuries he allegedly sustained from the incident: (1) the elbow fracture from Officer O'Neill's use of the twist lock, and (2) pain and a hurt wrist from Defendants not affirmatively moving Plaintiff to a more comfortable position after the fracture. The Court discusses each in turn.

## I.      Elbow Fracture

Officers O'Neill and Sousa argue no reasonable trier of fact could find they engaged in

---

[2] Under California Government Code § 815.2, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

1  excessive force causing Plaintiff's elbow to fracture, and in the alternative, that they are entitled to
2  qualified immunity.

### A. Excessive Force

"In evaluating a Fourth Amendment claim of excessive force, [courts] ask 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.'" *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The "analysis must balance the nature of the intrusion upon an individual's rights against the countervailing government interests at stake, without regard for the officers' underlying intent or motivations*.*" *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019). Courts consider the totality of the circumstances, including "(1) the 'severity of the crime at issue,' (2) whether the suspect 'poses an immediate threat to the safety of the officers or others,' and (3) whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight.'" *Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022) (quoting *Graham*, 490 U.S. at 396). Courts also consider "the availability of less intrusive alternatives to the force employed and whether warnings were given." *Hopson v. Alexander*, 71 F.4th 692, 698 (9th Cir. 2023). Of the factors, "the 'immediate threat to safety' factor is the most important." *Peck*, 51 F.4th at 887. However, the Court "must ultimately consider the totality of the circumstances 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*. (*quoting* Graham, 490 U.S. at 396). Therefore, "[o]nly information known to the officer at the time the conduct occurred is relevant." *S.R. Nehad,* 929 F.3d at 1132.

So, the relevant question is whether a reasonable trier of fact could find Officers O'Neill and Sousa used more force than was reasonable at the time of the alleged injury.

### 1. Officer O'Neill

A reasonable trier of fact could find Officer O'Neill's application of a "twist lock" on Plaintiff's right elbow when Plaintiff was face down on the ground with his arms behind his back caused Plaintiff's elbow injury.  (Dkt. No. 62-3 at 23-25.)  Defendants argue Officer O'Neill's use of a twist lock was nonetheless reasonable as a matter of law because Plaintiff was actively resisting arrest when Officer O'Neill started to assist in handcuffing him. (Dkt. No. 62 at 8, 12, 14,

5

18, 20-22, 24.) Indeed, Officer Sousa acknowledged in his deposition testimony that the "twist lock" is used only when "somebody is resisting." (Dkt. No. 63 at 37); *see also Bernal v. Sacramento County Sheriff's Dept.*, 73 F.4th 678, 684 n.2 (9th Cir. 2023) (discussing how a twist-lock is a "type of control hold which uses pain to gain control" of resisting arrestees); *Fitzgerald v. Santoro*, 707 F.3d 725, 734 (9th Cir. 2013) (upholding the use of a twist lock as a "minimally forceful technique[] designed to subdue non-compliant subjects and prevent escalation."). Thus, whether Officer O'Neill is entitled to summary judgment on Plaintiff's excessive force claim depends on whether a reasonable trier of fact could find Plaintiff was *not* actively resisting arrest at the time Officer O'Neil used the twist lock hold.

It is undisputed Plaintiff initially fled from Officer Sousa when he was told he was under arrest. (Dkt. No. 63 at 4 at 1:15-25.) It is also undisputed that after fleeing for ten seconds, Plaintiff put his hands up, then behind his head, knelt and proceeded to lay on the ground face-down, finally placing his hands behind his back. (*Id.* at 1:25-30.) As he began to lay down and while he was on the floor Plaintiff began saying "I'm sorry, I'm sorry" multiple times. (*Id.* at 1:29-36.) When Officer O'Neill arrived next to Plaintiff, Plaintiff was already on the ground, and Officer Sousa was on top of Plaintiff, holding his left arm behind his back. (Dkt. No. 62-3 at 1:00-02.) At his deposition, Officer O'Neill testified about what he did when he arrived:

> Q: Okay. And so what did you do when you walked up?
>
> A: I grabbed ahold of Mr. Johnson's right arm, applied a twist lock to gain control, put it to the rear of his back for handcuffing.
>
> Q: Now, did Mr. Johnson try to punch you or kick you when you approached?
>
> A: No.
>
> Q: Did he, you know, yell any profanities at you directly when you approached?
>
> A: I don't recall.
>
> Q: When you grabbed hold of his right arm, did he, you know, try to pull it away from your hold?
>
> A: I would describe it as less of a pull away but not quite complying, and going limp, so to say.

>Q: But did he stiffen his arm, like, flexing his muscles?
>
>A: To an extent.
>
>Q: Did he do anything that made you feel like he wasn't going to comply with you?
>
>A: Did he do anything to make me feel like he wasn't going to comply?
>
>Q: Yeah.
>
>A: I would say that the act of flight from running had my concern from the beginning that **he may immediately resume his resistance**."

(Dkt. No. 62-3 at 25-26 (emphasis added).) Officer O'Neill further explained why he applied a twist lock: "I apply a twist lock to gain control of the arm. Should he choose to **regain resistance**, that would keep a control. Brought the arm behind his back for handcuffing." (*Id.* at 27 (emphasis added).)

Based on Officer O'Neill's testimony, a reasonable trier of fact could find Plaintiff was not resisting arrest when Officer O'Neill applied the twist lock. He testified he used the twist lock in case Plaintiff "resumed" resistance, or "regained" resistance, supporting an inference Officer O'Neill did not perceive any resistance at the time he used the twist lock. Video of the arrest is consistent with a lack of resistance at the time Officer O'Neill applied the twist lock. (Dkt. No. 63 at 4 at 1:25-30.) And neither Officer Sousa's police report nor Officer O'Neill's supplemental report state Plaintiff was actively resisting arrest once he got down on the ground. (Dkt. No. 62-3 at 12; Dkt. No. 63 at 12-14.)

Defendants' insistence Plaintiff admitted he was resisting arrest at the time Officer O'Neill used the twist lock is unpersuasive. An officer questioned Plaintiff at the hospital while he was being treated for his injury:

>A: Yea, and then another guy came and then I tried to put my head back square and then he jumped on me…
>
>Q: Okay
>
>A: Or, he did his job. And then he grabbed my elbow. And, you know, I'm, I'm tense so I was stiff, but I wasn't resisting or nothing and then he just twisted it hard and it popped instantly.

7

(Dkt. No. 63 at 5 at 2(b) at 40:40-41:00.) Drawing all reasonable inferences in Plaintiff's favor, this statement is not an admission he stiffened his right arm and so was actively resisting Officer O'Neill's attempt to handcuff him. In the statement he does not explain what he meant by "I'm tense so I was stiff," including where he was stiff, and Defendants did not ask him about the statement at his deposition. Further, he immediately disclaims any resistance, supporting an inference that when he said he was stiff he was not stiff in his arm such that he was resisting arrest. While a reasonable trier of fact could interpret his statement as an admission of resistance, that is not the only reasonable interpretation of the statement.

"Viewing the evidence in the light most favorable to the nonmoving party," the Court cannot find that, as a matter of law, Officer O'Neill used reasonable force in restraining Plaintiff by using a twist-lock when Plaintiff was laying prone with his hands behind his back. *Deveraux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*)).

### 2. Officer Sousa as an Integral Participant

It is undisputed Officer Sousa did not himself fracture Plaintiff's elbow, so he may only be liable for this injury under an "integral participant" theory of liability. An officer may be held liable under § 1983 when he does not "intervene to prevent an ongoing constitutional violation." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022). To be liable as an "integral participant," an officer "must be more than a 'mere bystander.'" *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (quoting *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011)). The Ninth Circuit has held there are two situations when such liability exists:

> (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or
>
> (2) the defendant sets in motion a series of acts by others which the defendant knows or reasonably should know would cause others to inflict the constitutional injury.

*Montoya*, 51 F.4th at 889 (cleaned up). The Ninth Circuit has held the first category "is fairly narrow." *Id.*

Plaintiff has not identified evidence that creates a genuine dispute of fact as to Officer

Sousa's liability under either theory. Indeed, at oral argument, Plaintiff conceded this theory of liability against Officer Sousa. So, Defendants' motion for summary judgment on Plaintiff's claim Officer Sousa was an integral participant in Officer O'Neill's alleged use of excessive force is granted.

### B. Qualified Immunity

Next, Officer O'Neill claims he is at least entitled to qualified immunity based on the following undisputed facts: (1) Plaintiff "appeared to be under the influence of a controlled substance"; (2) Plaintiff "was a known and documented potential threat to law enforcement;" (3) he had "only moments prior, disobeyed Officer Sousa's lawful commands;" (4) and he "feigned 'surrender;'" (5) and then fled "from Officer Sousa on foot;" (6) after which "there were children and a then unknown man in the immediate area;" (7) where Plaintiff had not yet been searched for weapons and was wearing a baggy jacket that could conceal such items;" and (8) "**where Plaintiff was presenting active resistance to handcuffing**." (Dkt. No. 62 at 23-24 (emphasis added).) As discussed above, however, fact 8 is in genuine dispute. *See Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017) ("[W]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity."); *see also S.R. Nehad*, 928 F.3d at 1140-41 (denying qualified immunity claim at summary judgment because "genuine disputes of material fact," including whether the defendant acted with excessive force, precluded such a ruling).

So, Officer O'Neill's motion for summary judgment based on qualified immunity is DENIED.

### C. State Law Claims

Defendants also move for summary judgment on Plaintiff's state law claims based on his first theory of alleged wrongful conduct: Officer O'Neill's application of a twist lock resulting in Plaintiff's fractured elbow.

#### 1. Battery

"A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Brown v.*

9

*Ransweiler*, 171 Cal. App. 4th 516, 527 (2009). Because the analysis is the same for the state law cause of action, *see id.*, the Court DENIES judgment as to Officer O'Neill and the City of Santa Rosa and GRANTS as to Officer Sousa.

### 2. Bane Act (California Civil Code § 52.1)

To succeed on a claim under the Bane Act, a plaintiff must show "(1) intentional interference or attempted interference with a state or federal constitutional or legal rights, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Id.* at 67. Further, "the elements of the excessive force claim under § 52.1 are the same as under § 1983." *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013). And Plaintiff concedes the Act also requires he prove Defendants acted with "specific intent to violate [his] right to freedom from unreasonable seizure." *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-1044 (9th Cir. 2018) (quoting *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 801 (2017)). A plaintiff must demonstrate the defendant committed "the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Cornell*, 17 Cal. App. 5th at 803 (cleaned up). Notably, "even if the defendant did not in fact recognize the unlawfulness of his act, he will be adjudged as a matter of law to have acted with the requisite specific intent—*i.e.*, in reckless disregard of constitutional or statutory prohibitions or guarantees." *Id.* (cleaned up).

Because the Bane Act excessive force inquiry is the same as it is for § 1983, *see Cameron*, 713 F.3d at 1022, the Court GRANTS the motion as to Officer Sousa, since Plaintiff failed to identify evidence sufficient to support a finding Officer Sousa was an integral participant in the alleged violation. As for Officer O'Neill and the first element, there is a genuine dispute of fact as to whether Officer O'Neill used excessive force against Plaintiff. There is also a genuine dispute as to the second element. The record supports a finding Officer O'Neill used a restrictive hold on Plaintiff that caused his elbow to fracture while Plaintiff had surrendered and was not resisting arrest. A reasonable trier of fact could conclude Plaintiff's lack of resistance was known to Officer O'Neill and that he nevertheless used a twist lock that resulted in Plaintiff's injury. Under these facts, a reasonable trier of fact could conclude Officer O'Neill acted with the intent to utilize

excessive force against Plaintiff.  As such, the Court DENIES the motion for summary judgment on the Bane Act as to Officer O'Neill and the City of Santa Rosa.

### 3. Negligence

California negligence claims require a showing "that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. Of San Diego*, 57 Cal.4th 622, 627 (2013).  Defendants move for summary judgment on the grounds the negligence claims must fail if the § 1983 and Bane Act claims fail.  (Dkt. No. 62 at 29.)  Because those claims survive as to Officer O'Neill, so does the negligence claim.  And, because they fail as to Officer Sousa, summary judgment in Officer Sousa's favor is warranted on the negligence claim.  Plaintiff does not identify anything other than his alleged—but unsupported—integral participation in support of the alleged negligence.  So, the Court GRANTS summary judgment as to Officer Sousa and DENIES as to Officer O'Neill and the City of Santa Rosa.

## II. Pain and Hurt Wrist

Plaintiff alleges in his complaint that Defendants are liable, not only for their excessive force in fracturing his elbow, but also for "intentionally placing the Plaintiff in handcuffs despite having notice that Plaintiff's elbow was fractured, causing him intense pain."  (Dkt. No. 21 ¶ 24.)  In their motion for summary judgment, Defendants do not address this liability theory.  Instead, Defendants' motion for summary judgment focuses singularly on Plaintiff's fractured elbow and how Officer O'Neill acted properly in applying the twist lock. (*See, e.g.*, Dkt. No. 62 at 7-8 ("This Motion for Summary Adjudication therefore asks this Court to determine, as a matter of law, whether it was objectively unreasonable for the Defendant Officers, and specifically, Officer Christopher O'Neill, to use a 'wrist lock' control hold – among the lowest options available on the use of force continuum – to control and secure Plaintiff to effectuate his lawful arrest on the date of the incident in question, when, at the time that said force was used against Plaintiff: . . . . Plaintiff was still presenting resistance"); Dkt. No. 66 at 9 ("In this case, given the allegations of Plaintiff's Complaint and his arguments raised in Opposition, the quantum of force at issue in this case is the reasonableness of the Defendant Officers' use and application of a 'twist lock'

control hold to the then actively resistant Plaintiff"). And Defendants' brief only makes a passing reference that their use of handcuffs was reasonable, but does not explain or clarify they seek summary judgment on this issue. (*Id.* at 22 ("Under these circumstances, where ..; the Defendant Officers' use of force – application of a 'twist lock' control hold for handcuffing – was objectively reasonable. So, too, was their use of handcuffs to secure Plaintiff.").) While Defendants did not address this liability theory in their motion or reply, Plaintiff's opposition preserved this theory. (Dkt. No. 65 at 7 ("Similarly, a jury can also find that neither SOUSA nor O'NEILL took any steps to address JOHNSON's broken arm for over 15 minutes after they had heard it break. Instead the officers continued to keep Plaintiff handcuffed with his arms behind his back.").)

The only potentially relevant evidence to this issue Defendants highlight is in the context of whether Officer Sousa was an integral participant. (Dkt. No. 62 at 24-25.) That evidence is Plaintiff's testimony that Officer Sousa handled him "with some care." (Dkt. No. 62-5 at 22.) But given there is no evidence as to what Plaintiff meant by this statement, it is insufficient to defeat Plaintiff's claim the officers unconstitutionally prolonged his handcuffing, thus causing him injury.

Because Defendants failed to move on this ground, the Court does not grant judgment on liability as to Officers Sousa or O'Neill for their alleged excessive force in maintaining Plaintiff in handcuffs while he was injured, and in not placing him in a more comfortable position until some time later.

### III. Punitive Damages

Punitive damages in a § 1983 action are permissible when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Under California law, a plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." Cal. Civ. Code § 3294 (a).

Here, the footage provided by Defendants shows the moment where Officer O'Neill broke Plaintiff's elbow. (62-3 at 4 at 1:03-04.) Further, Officer O'Neill testified that he heard the sound of Plaintiff's elbow breaking and heard Plaintiff shout in pain after he had sustained his injury.

(*Id.* at 28-29.) He also testified that he believed he had injured Plaintiff at this time. (*Id.* at 29.) Given these facts, a reasonable trier of fact could conclude Officer O'Neill acted with the requisite intent under both California and Federal law.

And, since Defendants did not seek summary judgment on the injury to Plaintiff's wrist and keeping Plaintiff in prolonged discomfort, the Court cannot grant summary judgment on punitive damages for that theory of excessive force either.

## CONCLUSION

The Court GRANTS Defendants' motion for summary judgment as to Officer De Leon because Plaintiff voluntarily dismissed his claims against Officer De Leon.

The Court GRANTS Defendants' motion for summary judgment as to Officer Sousa's participation in fracturing Plaintiff's elbow because, as Plaintiff conceded at oral argument, no reasonable trier of fact could find Officer Sousa was an integral participant in the conduct leading to that injury.

In all other respects, the motion for summary judgment is DENIED for the reasons explained above.

This Order disposes of Docket No. 62.

**IT IS SO ORDERED.**

Dated: November 21, 2024

JACQUELINE SCOTT CORLEY
United States District Judge