UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PAUL JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SANTA ROSA, et al.,<br><br>Defendants. | Case No.  23-cv-02478-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 148 |

Plaintiff John Paul Johnson's excessive force claims against Officer Cody Sousa and Officer Christopher O'Neill were tried to a jury.  Following a unanimous jury verdict, the Court entered judgment in favor of Plaintiff against Officer O'Neill in the amount of $10,000, and in favor of Officer Sousa and against Plaintiff.  (Dkt. No. 138.)[1]  Now pending before the Court is Plaintiff's motion for attorneys' fees. (Dkt. No. 148.)  Plaintiff seeks $340,677.50 in fees and $16,793 in costs for a total award of $357,470.50.  After considering the parties' briefs, the Court concludes oral argument is not required.  *See* N.D. Cal. Civ. L.R. 7-1(b).  For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorneys' fees and costs. The Court finds Plaintiff incurred $113,044.82 in reasonable attorneys' fees, but has not established a basis for a costs award.

**FACTUAL BACKGROUND**

Plaintiff had a history of mental illness and harassing the Santa Rosa Police Department with repeated threatening phone calls.  (Dkt. Nos. 63 at 12, 19-20; 62-3 at 12, 21.)  In March 2022, Officer Sousa attempted to place Plaintiff under arrest in a supermarket, Plaintiff ran away, and

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Officer Sousa ran after him. (Dkt. No. 63 at 4 at 1:12-32) Officer O'Neill was on patrol and driving towards Plaintiff's location. (Dkt. No. 62-3 at 21-23.) Plaintiff laid down on his stomach with his hand behind his back, and Officer Sousa handcuffed Plaintiff's left hand. (Dkt. No. 63 at 4 at 1:12-1:32; *id.* at 21.) Officer O'Neill got out of his car, moved quickly towards Plaintiff, kneeled on Plaintiff, and placed his right arm in a twist lock. (Dkt. No. 62-3 at 4 at 0:59-1:04.) This action made an audible crunching sound, and Plaintiff began screaming in pain, telling the officers they broke his elbow. (Dkt. Nos. 62-2 at 4 at 1:04-1:05; 63 at 4 at 1:32-1:53.) The officers handcuffed Plaintiff's right hand behind his back. At the hospital, doctors told Plaintiff he suffered a radial head fracture to his right elbow. (Dkt. No. 63 at 13.)

## PROCEDURAL HISTORY

Plaintiff sued Officer Cody Sousa, Officer Christopher O'Neill, Dan Jones, and Sergeant Hector Deleon for violation of his constitutional rights by using excessive force and committing an unlawful arrest. (Dkt. No. 1.) Defendants moved to dismiss Plaintiff's complaint but withdrew their motion after Plaintiff filed an amended complaint. (Dkt. Nos. 18, 21, 22.) Plaintiff's claims against Mr. Jones were dismissed without prejudice for failure to serve. (Dkt. No. 38.) Plaintiff then voluntarily dismissed his false arrest and false imprisonment causes of action. (Dkt. No. 59.) Defendants moved for summary judgment of all remaining causes of action, and Plaintiff voluntarily dismissed his claims against Sergeant DeLeon in his opposition. (Dkt. Nos. 62, 65.) The Court granted in part and denied in part Defendants' motion for summary judgment. (Dkt. No. 69.) Plaintiff's claims for excessive force against Officer Sousa and Plaintiff's claims for excessive force, battery, Bane Act violation, and negligence against Officer O'Neill proceeded to jury trial. (Dkt. Nos. 114, 118, 125.) Following a unanimous jury verdict, the Court entered judgment in favor of Plaintiff on his excessive force, battery, and negligence claims against Officer Sousa, but against Plaintiff on his excessive force claim against Officer Sousa and the Bane Act claim against Officer O'Neill. (Dkt. Nos. 131, 138). The jury awarded Plaintiff $10,000 in compensatory damages and no punitive damages. (Dkt. No. 131.) Plaintiff now moves for attorneys' fees pursuant to 42 U.S.C. § 1988. (Dkt. No. 148.)

//

2

United States District Court
Northern District of California

**DISCUSSION**

Under 42 U.S.C. § 1988(b), the Court has discretion to award attorneys' fees, including litigation costs, to prevailing parties in civil rights cases. Plaintiff is the prevailing party because the jury awarded $10,000 in compensatory damages and "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992); *see also id.* at 111-12 ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."). As the prevailing party, Plaintiff seeks $357,470.50 in attorneys' fees and costs. (Dkt. Nos. 148 at 12 (requesting attorneys' fees in the amount of $183,515.00 for Mr. Cajina and $157,162.50 for Mr. Goff); 158 at 8-9 (seeking $16,793.00 in costs)).

**I.    Attorneys' Fees Request**

To calculate an award of attorneys' fees, district courts apply "the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party requesting fees bears "the burden of submitting billing records to establish that the number of hours" requested are reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The number of hours should not exceed the number of hours reasonably competent counsel would bill for similar services; courts may reduce the hours expended "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley*, 461 U.S. at 433-34). The Ninth Circuit has identified several factors courts should consider in determining the reasonableness of the number of hours expended and the hourly rate charged, including: (1) the "experience, reputation, and ability of the attorney"; (2) "the outcome of the results of the proceedings"; (3) "the customary fees"; and (4) "the novelty or the difficulty of the question presented." *Chalmers*, 796 F.2d at 1211 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70

3

(9th Cir. 1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992)).

Plaintiff requests $340,677.50 in attorneys' fees based on the following lodestar:

| Attorney | Requested Rate | Requested Hours | Lodestar |
|---|---|---|---|
| Mr. Goff | $825/hour | 190.5 | $157,162.50 |
| Mr. Cajina | $850/hour | 215.9 | $183,515.00 |
| | | **TOTAL** | $340,677.50 |

(Dkt. No. 148 at 10-11.)  As explained below, the Court finds the requested hourly rates and hours expended are not reasonable.

## A. Reasonable Hourly Rates

"A reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (internal quotation marks and citation omitted).  "[T]he burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorneys' own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted) (emphasis added).  "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, rate determinations in other cases, and rate determinations of the plaintiff's attorney in other cases, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  "To determine appropriate hourly rates, [courts] look to rates prevailing in the San Francisco Bay Area for *similar services* performed by attorneys of reasonably comparable skill, experience, and reputation." *Medina v. City of Menlo Park*, No. C 08-3946 WDB, 2009 WL 10710479, at *3 (N.D. Cal. Oct. 2, 2009) (citing *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989)) (emphasis in original).

From 2019 to 2022, courts in this District typically awarded rates between $350 and $475 to prevailing civil rights attorneys. *See, e.g.*, *Johnson v. 441 First St., LLC*, No. 5:21-CV-04202-EJD, 2022 WL 2988849, at *3 (N.D. Cal. July 28, 2022) (awarding hourly rates between $350 and $475); *Johnson v. Ends In E. Inc.*, No. 5:20-CV-06946-EJD, 2021 WL 5565842, at *3 (N.D. Cal.

4

United States District Court
Northern District of California

Nov. 29, 2021) (awarding hourly rates between $350 and $475); *Fobbs v. Kendall*, No. 17-CV-03901-JCS, 2021 WL 4818939, at *3 (N.D. Cal. Oct. 15, 2021) (approving requested hourly rate of $230 for attorney admitted to practice in 2014); *Block v. SmileMart, Inc.*, No. 19-CV-07758-VKD, 2021 WL 764041, at *2 (N.D. Cal. Feb. 26, 2021) (approving requested hourly rate of $475); *Johnson v. Progreso Dev., LLC*, No. 5:20-CV-02167-EJD, 2020 WL 6136093, at *4 (N.D. Cal. Oct. 19, 2020) (awarding hourly rates of $350); *Love v. Gertrude Allen Fam. Ltd. P'ship*, No. 18-CV-04082-JSW, 2020 WL 13968099, at *4 (N.D. Cal. Aug. 20, 2020) (awarding rates between $350 and $475); *Johnson v. Baglietto*, No. 19-CV-06206-TSH, 2020 WL 3065939, at *12 (N.D. Cal. May 21, 2020) (awarding rates ranging from $350 to $475), *report and recommendation adopted*, No. 19-CV-06206-HSG, 2020 WL 3060902 (N.D. Cal. June 9, 2020); *Johnson v. Oakwood Ctr. LLC*, No. 19-cv-01582-VKD, 2019 WL 7209040, at *13 (N.D. Cal. Dec. 27, 2019) (awarding rates ranging from $350 to $475); *Johnson v. AutoZone, Inc.*, No. 17-cv-02941-PJH, 2019 WL 2288111, at *5-7 (N.D. Cal. May 29, 2019) (awarding rates ranging from $250 to $425).

Courts in this District sometimes fix hourly rates above this range when presented with evidence justifying such an award, such as an attorney having an exceptional amount of experience. *See, e.g.*, *Dominguez v. City of San Jose*, No. 18-CV-04826-BLF, 2023 WL 2717266, at *6 (N.D. Cal. Mar. 29, 2023) (awarding hourly rate of $650 for civil rights attorney with over 40 years of experience and $500 for civil rights attorney with 20 years of experience), *aff'd sub nom. Dominguez v. Pina*, No. 23-15554, 2024 WL 2103271 (9th Cir. May 10, 2024); *Zuegel v. Mountain View Police Dep't*, No. 17-CV-03249-BLF, 2021 WL 2808977, at *6 (N.D. Cal. July 6, 2021), *aff'd*, No. 21-16277, 2024 WL 1007500 (9th Cir. Mar. 8, 2024) (awarding a rate of $675 to a civil rights attorney with nearly 40 years of experience). One court in this District approved hourly rates of $450-$550 for successful plaintiffs' attorneys in an excessive force case when the fee request was supported by ample evidence and expert testimony. *See Steward v. Cnty. of Santa Clara*, No. 18-CV-04119-SI, 2022 WL 94911, at *3 (N.D. Cal. Jan. 10, 2022) (citing Dkt. No. 147 ¶ 13 (approving requested rates of $550 for attorney admitted in 2013 and $450 for attorney admitted in 2015)).

When evaluating hourly rates from previous decisions, courts may adjust for inflation.

*See, e.g.*, *Moralez v. Monterey Plaza Hotel Limited P'ship*, 2025 WL 2469334, at *3-4 (N.D. Cal. Aug. 27, 2025) (fixing hourly rate of $425 based on disability access cases from 2019 to 2021 and adjusting to $535 for inflation). Therefore, the Court increases the $350-$475 range from civil rights cases between 2019 and 2022 by 25% to $440-$600 to account for inflation. *See id.* (increasing hourly rate by approximately 25% to account for inflation from 2021 to 2025).

Next, the Court determines where, relative to the $440-$600 range, to fix Mr. Goff's and Mr. Cajina's rates. In calculating a reasonable hourly rate for a civil rights attorney, courts consider "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008). Notwithstanding the harm to Plaintiff and the importance of vindicating his civil rights, this case was not legally or factually complex. Other courts in this District have noted similar excessive force cases are akin to personal injury cases because they "ar[i]se out of one compact historical event and [] had no demonstrably dramatic physical consequences." *Medina*, 2009 WL 10710479, at *3. Plaintiff requested an additional $25 per hour for Mr. Cajina's hourly rate, perhaps to account for his seven additional years of experience as compared to Mr. Goff. But Plaintiff has presented no evidence in support of the requested rates for Mr. Goff and Mr. Cajina other than their own declarations. Considering these factors, the Court fixes the reasonable hourly rates for Mr. Goff and Mr. Cajina at $440 and $465 respectively.

Plaintiff insists because Mr. Goff and Mr. Cajina both have over ten years of experience, their experience is commensurate with the "level of a partner in a law firm." (Dkt. No. 158 at 5.) But Plaintiff's apples-to-oranges comparison is unavailing. The Court must consider "rates prevailing in the San Francisco Bay Area for ***similar services*** performed by attorneys of reasonably comparable skill, experience, and reputation." *Medina*, 2009 WL 10710479, at * 3 (emphasis in original) (bold added). This case—a legally and factually straightforward excessive force case without severe physical injury or death—is not nearly as complex as the commercial cases handled by big law firms with large, corporate clients, such as mass torts, securities, intellectual property, or antitrust. *See id.* ("To honor these significant public policies"—*i.e.*,

protecting civil rights and disciplining government power—"it is neither necessary nor appropriate to fix hourly rates at levels that can be commanded in the private sector only for the most complex and challenging litigation and that will be paid only by large corporate clients").

Plaintiff's reliance on the *Laffey* Matrix is also unavailing. Mr. Goff and Mr. Cajina compare their requested hourly rates to their respective 2025 *Laffey* Matrix rates of $902 and $1,019. (Dkt. No. 148 at 9-11 (citing *Laffey Matrix*, https://www.laffeymatrix.com/see.html) (stating a rate of $902 for attorneys 8-10 years out of law school and $1,019 for attorneys 11-19 years out of law school).) The *Laffey* Matrix rates and Plaintiff's requested hourly rates far exceed the rates courts in this District award to even the best and most experienced civil rights attorneys. *See, e.g.*, *Chapman v. NJ Props. Inc.*, No. 5:16-CV-02893-EJD, 2019 WL 3718585, at *4 (N.D. Cal. Aug. 7, 2019) ("$750/hour[] is the exception, not the norm, among ADA litigators in this district"), *aff'd sub nom. Chapman v. Panchal*, 834 F. App'x 333 (9th Cir. 2021). Moreover, the Ninth Circuit has held district courts cannot be faulted "for declining to use the Laffey matrix." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Plaintiff submits no evidence in support of the requested rates other than Mr. Goff's and Mr. Cajina's own affidavits, both of which make a conclusory comparison between their requested hourly rates, the *Laffey* Matrix rates, and the billing rate of a first-year associate at Millbank. (Dkt. Nos. 148-1 ¶ 8; 148-2 ¶ 8.)

The cases cited by Plaintiff do not persuade. *In re HPL Techs., Inc. Sec. Litig.* was a securities fraud class action involving a much greater degree of factual and legal complexity than this straightforward excessive force case. *See* 366 F. Supp. 2d 912, 915, 918–19 (N.D. Cal. 2005). In *Syers Props. III, Inc. v. Rankin*, the appellate court noted "the courts will look to equally difficult or complex types of litigation to determine which market rates apply" and noted "the trial court's rate determination was supported not only by the adjusted *Laffey* Matrix, but also by" expert testimony on prevailing rates in the San Francisco Bay Area from an attorney with over 20 years of experience in civil litigation. 226 Cal. App. 4th 691, 700 (2014). Moreover, the trial court acknowledged "the services performed [were] 'sophisticated' legal work" and "the hourly rate was 'not even close to the highest hourly rate that I have seen in *this area*.'" *Id.* at 702

7

(emphasis added).  Unlike in *Syers*, here there is no additional evidence supporting the rates claimed, and the requested hourly are beyond the highest hourly rate awarded in this District, even adjusting for inflation.

So, the Court fixes a reasonable hourly rate for Mr. Goff at $440 and Mr. Cajina at $465 based on awards in other civil rights cases in this District, Mr. Goff's and Mr. Cajina's relative levels of experience, and this case's factual and legal simplicity.

**B.  Hours Reasonably Expended**

A party seeking attorneys' fees bears the burden to "document[ ] the appropriate hours expended." *Hensley*, 461 U.S. at 437.  "To meet that burden, the moving party must submit detailed records justifying the hours that have been expended." *Forto v. Capital One Bank, Nat'l Ass'n*, 2017 WL 6026242, at *3 (N.D. Cal. Dec. 5, 2017) (citing *Chalmers*, 796 F.2d at 1210). "The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees." *Rivera v. Portfolio Recovery Associates, LLC*, No. 13-2322 MEJ, 2013 WL 5311525, at *4 (N.D. Cal. Sept. 23, 2013).  However, "[e]ven if the opposing party has not objected to the time billed, the district court 'may not uncritically accept a fee request,' but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case." *Id.* (quoting *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.  A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary.  *See id.* at 433-34; *see also Chalmers*, 796 F.2d at 1210 ("Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary.").

Plaintiff requests attorneys' fees for 215.9 hours for Mr. Cajina and 190.5 hours for Mr. Goff.  As explained below, the Court deducts 14.5 hours from Mr. Cajina's lodestar and 6 hours from Mr. Goff's time for unreasonable or excessive hours.  Then, the Court applies a 30% across-

the-board reduction to Mr. Goff's remaining hours to account for his billing in one-hour increments. Finally, the Court exercises its discretion to further apply a 10% haircut to account for inflated hours and block billing.

### 1. Deductions for Unnecessary Work

The Court may reduce the lodestar's hours expended "if the case was overstaffed and hours are duplicated" or "if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796 F.2d at 1205. Defendants insist Plaintiff's counsel recorded unnecessary, duplicative, and excessive hours.

#### a.    Motions never filed

Mr. Cajina expended 3.7 hours "[r]esearching motion for new trial pursuant to Rule 59; initial draft of motion." (Dkt. No. 148-2 at 11.) This motion was never filed, so, the Court deducts 3.7 hours from Mr. Cajina's lodestar as unnecessary.

#### b.    Counsel's failure to follow the Court's procedures

An applicant for fees must exercise "billing judgment" with respect to hours worked. *Hensley*, 461 U.S. at 436. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434; *see also Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) ("the court should disallow [] hours spent on tasks that would normally not be billed to a paying client"). A paying client would normally not pay for time his lawyer spent fixing mistakes. The Court therefore finds Plaintiff's counsel failed to exercise billing judgment by requesting attorneys' fees for hours expended remedying their own failures to follow the Court's procedures.

##### i.    Repeated failures to serve defendants

On August 25, 2023, Magistrate Judge Hixon issued an order stating Plaintiff had not yet filed proof of service (despite the original complaint being filed on May 21, 2023) or filed a case management statement by the August 17 deadline. As a result of these failures, Judge Hixson ordered Plaintiff to file a status update by August 24, 2023. But he failed to do that too. (Dkt. No. 6.) So, Judge Hixson ordered Plaintiff to show cause why the action should not be dismissed for failure to prosecute. (Dkt. No. 7 at 1-2.) The Court declines to award fees Mr. Cajina incurred in

United States District Court
Northern District of California

connection with Judge Hixon's order:

| 08/22/23 | Communication with co-counsel re status. | .3 |
| 08/25/23 | Reviewed court order re status | .2 |
| 09/01/23 | Email from co-counsel re successful service of process. | .1 |
| 09/07/23 | Prepared and filed declaration re: Court order | .7 |
| | **TOTAL** | 1.3 |

(Dkt. No. 148-2 at 7.)  The Court therefore deducts 1.3 hours from Mr. Cajina's lodestar.

After this case was reassigned to the undersigned judge, and five months after Judge Hixon's earlier Order to Show Cause, the Court issued a second Order to Show Cause.  The Order noted Plaintiff had still not served the individual defendants, Plaintiff did not participate in filing a joint case management conference statement, Plaintiff did not file a separate statement, and it appeared Plaintiff had failed to produce his required disclosures.  (Dkt. No. 29.)  The Court declines to award fees in connection with this Order and counsel's lack of diligence:

| 02/13/24 | Filing re 02/09 order. Reviewed order. Prepared and exchanged Rule 26 disclosure. Discussions with client. | 3.2 |
| 02/15/24 | Prepared for and attended CMC | 1.3 |
| | **TOTAL** | 4.5 |

(Dkt. No. 148-2 at 7.)  Given the block billing, the Court is unable to separate non-compensable time spent on the Order to Show Cause from work on Rule 26 disclosures, or work preparing for the case management conference related to counsel's failure to follow deadlines.  So, the Court deducts an additional 4.5 hours from Mr. Cajina's lodestar.

### ii.      Motion to compel opposition

Defendants emphasize Plaintiff's failure to cooperate with defense counsel regarding joint filings and discovery.  (Dkt. Nos. 44, 44-1, 45-46, 49, 52-57.)  On June 17, 2024, Defendants (1) moved to compel Plaintiff's responses to special interrogatories and requested production of documents, and (2) requested sanctions.  (Dkt. No. 44.)  Plaintiff eventually produced responses to the discovery on July 8 and 9, 2024.  (Dkt. Nos. 54 ¶ 7; 55 ¶ 5.)  In its order denying Defendants' request for sanctions, the Court noted "[i]f Defendants had complied with the Court's Standing Order regarding face-to-face meet and confers and a discovery dispute joint letter, the parties likely could have resolved their dispute before involving the Court and incurring the attorneys' fees Defendants now request" and "Defendants' own conduct created the urgency Defendants

10

contend required them to file their motion to compel in violation of the Court's Standing Order." (Dkt. No. 47 at 4-5.)  The same reasoning applies to Plaintiff's counsel.  The time spent responding to Defendants' motion was unreasonable because counsel would not have needed to respond to the motion if they had timely responded to the interrogatories and document requests or met and conferred with Defendants.  The Court therefore declines to award attorneys' fees for hours expended opposing Defendants' motion to compel.

| 6/17/2023; 6/25/2023 [sic] | Reviewed Motion to Compel and took notes | 2 |
| 6/30/2023; 7/1/2023 [sic] | Drafted opposition to Motion to Compel and filed document | 2 |
| 7/8/2023 [sic] | Reviewed reply regarding Motion to Compel and took notes | 1 |
| 7/22/2023 [sic] | Prepared and filed Declaration in support of opposition to Motion to Compel | 1 |
| | **TOTAL** | 6 |

(Dkt. No. 148-1 at 5 (Mr. Goff's affidavit).)

| 06/17/2024 | Reviewed motion from counsel | .4 |
| 07/01/24 | Drafted and filed oppo to motion to compel | 1.1 |
| 7/22/24 | Reviewed declaration from OC | .3 |
| | **TOTAL** | 1.8 |

(Dkt. No. 148-1 at 5 (Mr. Cajina's affidavit).)

So, the Court will deduct 6 hours from Mr. Goff's lodestar and 1.8 hours spent by Mr. Cajina.

### iii.     Ex parte motion to appear remotely

At 11:45pm on Friday, January 2, 2026—the last court day before trial—Plaintiff filed an ex parte administrative motion to appear remotely at his own trial.  (Dkt. No. 112.)  Plaintiff did not meet and confer with Defendants or provide any notification of this motion before it was filed. The Court disallows fees for hours expended on this untimely motion:

| 01/01/25 [sic] | Reviewed client communication. | 0.1 |
| 01/02/25 [sic] | Communicated with client and representative. Filed motion for plaintiff to testify remotely. | 3.1 |
| | **TOTAL** | 3.2 |

(Dkt. No. 148-2 at 7.)

So, the Court will deduct an additional 3.2 hours from Mr. Cajina's lodestar.

11

United States District Court
Northern District of California

### c.    It was not unreasonable for both counsel to attend settlement conferences

The Court disagrees with Defendants' insistence Mr. Cajina's and Mr. Goff's presence at the settlement conferences was duplicative and excessive.  Most cases settle and mediation is frequently one of the most important—if not the most important—proceedings in a case.  It is thus reasonable for co-counsel to participate in the proceeding together, which is perhaps why Defendants had two attorneys participate in the post-trial settlement conferences as well.  (Dkt. Nos. 145, 157.)  *See Dhaliwal v. Singh*, No. 1:13-CV-00484-LJO, 2014 WL 4418241, at *3 (E.D. Cal. Sept. 5, 2014) (finding it not unreasonable for two attorneys to attend a settlement conference when the scheduling ordered required the "attorneys who will try the case" to appear); *Walls v. Cent. Contra Costa Transit Auth.*, No. CV-08-224 PJH JSC, 2012 WL 2711252, at *6 (N.D. Cal. Apr. 30, 2012) (finding it not unreasonable for both counsel to attend a mediation), *report and recommendation adopted sub nom. Walls v. Cent. Contra Costa Transit Auth.*, No. C 08-0224 PJH, 2012 WL 2705025 (N.D. Cal. July 6, 2012).

### d.    Sergeant Vickers' deposition was not unreasonable

Defendants argue Plaintiff's counsel unreasonably expended time preparing for and taking the deposition of Sergeant Vickers, who was not a defendant and not called as a trial witness.  "A deposition need not be absolutely indispensable to justify an award of costs; rather, it must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of trial or summary deposition." *Andresen v. Int'l Paper Co.*, No. 2:13-CV-02079-CAS, 2015 WL 3648972, at *7 (C.D. Cal. June 10, 2015) (quoting *Frederick v. City of Portland*, 162 F.R.D. 139, 143 (D. Or. 1995)); *cf. E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 683 (9th Cir. 1997) (affirming district court's disallowing deposition costs for witnesses not called at trial when the district court "found that the depositions themselves were unnecessary").  Defendants have not persuaded the Court that it was not reasonably necessary for Plaintiff to take Sergeant Vickers's deposition at the time it was taken, especially because Sergeant Vickers was Defendants' witness.  (Dkt. No. 98 at 24.)  First, perhaps Plaintiff decided not to call Sergeant Vickers as a witness only after obtaining his deposition testimony.  Second,

United States District Court
Northern District of California

Plaintiff could not have known at the time of Sergeant Vickers's deposition that Defendants would not call Sergeant Vickers as a witness at trial.

####         e.        It was not unreasonable for two attorneys to work on the case

Defendants also argue only one Plaintiff's attorney was needed.  Multiple attorneys working together on a case is not duplicative per se.  *See Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (finding it reasonable for one senior attorney and two junior attorneys to work on a case when the other parties had one and two lawyers).  Defendants do not identify any specific instances of duplication other than both Mr. Cajina's and Mr. Goff's joint presence at the settlement conference, which, as explained above, was not unreasonable.

####     2.    Mr. Goff's One-Hour Billing Increments Warrants a 30% Reduction

Mr. Goff billed nearly all his time in one-hour increments, and occasionally billed in 15 or 30 minute increments.  (Dkt. No. 148-1 at 4-8.)  It is not plausible Mr. Goff always worked in exactly one-hour increments for the past two years, and Mr. Goff likely overstates hours worked because of his rounding-up.  When attorneys request fees based on 15-minute increments, courts often impose across-the-board reductions of about 20% to account for overbilling.  *See, e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (affirming trial court's 20% reduction when time was billed in 15-minute increments); *MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2016 WL 3055643, at *8 (N.D. Cal. May 31, 2016) (reducing requested hours by about 10% when time entries were in either one- or half-hour increments); *Alvarado v. FedEx Corp.*, No. C 04-0098 SI, 2011 WL 4708133, at *17 (N.D. Cal. Sept. 30, 2011) (reducing requested hours by 20% across-the-board for billing in 15-minute increments because such billing likely overstated hours actually worked); *see also id.* (citing The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03–01 (2003) (estimating billing in increments of .25 to .5 "probably increases the time by 15% to 25%")).

So, the Court deducts 30% from Mr. Goff's hours (after excluding the unreasonably expended hours identified above) to account for his one-hour billing increments.

####     3.    Overbilling and Block Billing Warrants a 10% Haircut

"[T]he district court can impose a small reduction, no greater than 10 percent—a

13

Case 3:23-cv-02478-JSC    Document 164    Filed 05/07/26    Page 14 of 21

'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  The Court exercises its discretion to impose a further 10% reduction for block billing and overbilling.

<div align="center">

**a.    Block billing reduction**

</div>

Defendants insist Plaintiff's attorneys' fees should be reduced because counsel block billed many time entries.  *See Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (explaining attorneys "block bill" their time when they record multiple tasks in large blocks of time without explaining how hours were allotted to specific tasks).  Many of Mr. Cajina's and Mr. Goff's timesheet entries describe large blocks of time allotted to the completion of multiple tasks, but there is no specific allotment of time per task.  (*See e.g.*, Dkt. Nos. 148-1 at 5 ("Review of documents, obtained (police reports, video footage from RING door cameras) worked on preparing complaint" for 10 hours); 148-2 at 11 ("Second day of trial. Conducted examination of witnesses; cross-examination. Prepared for trial. Multiple meetings with client, expert, and client's representative regarding scheduling" for 14.5 hours).

Plaintiff's counsel's block billing made it difficult for the Court to "identify distinct claims"—*i.e.*, analyze the number of hours expended on each task.  *See Hensley*, 461 U.S. at 437 & n.12.  For example, on February 4, 2026, Mr. Cajina logged 2.1 hours for "Discussed matter with client. Reached out to the court to inform them the client would need to appear remotely. Reviewed Defendants' motion for Judgment as a Matter of Law." (Dkt. No. 148-2 at 11.)[2]  The Court has no way of discerning whether Mr. Cajina spent two hours or 20 minutes reviewing Defendants' motion and is forced to "estimate the number of hours to apportion to each task." *See Mann v. Morgan Stanley Smith Barney, LLC*, No. 215CV00217GMNPAL, 2016 WL 1254242, at *6 (D. Nev. Mar. 28, 2016).

However, the Court may not apply an across-the-board reduction to the total lodestar beyond the "haircut" range unless Plaintiff's counsel block billed *every* entry.  *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (holding "the district court clearly erred in

---

[2] The entry is also clearly incorrect as trial concluded on January 9, 2026—there was no client appearance in February 2026 for which counsel would need to "reach out to the court."

<div align="center">

14

</div>

United States District Court
Northern District of California

applying a 20 percent reduction to all of Welch's requested hours" because "barely more than half of all hours submitted by Welch's counsel were block billed"); *Mann*, 2016 WL 1254242, at *6 (applying across-the-board reduction to account for overbilling as a result of block billing when every timesheet entry was block billed); *see also* The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03–01 (2003) ("Fee Report"). Mr. Cajina and Mr. Goff block billed their timesheet entries frequently, but not always. Therefore, an across-the-board deduction of more than 10% is not appropriate.

So, the Court exercises its discretion to impose a 10% "haircut," in part because of Plaintiff's counsel's block billing. *See Moreno*, 534 F.3d at 1112.

### b. Reduction for overbilling

Defendants also argue Plaintiff's counsel spent an unreasonable time on tasks, identifying, for example, a collective 17.3 hours expended on the instant motion for attorneys' fees. The Court finds Mr. Cajina's time generally reasonable. Mr. Goff's hours were excessive; however, the Court reduced his lodestar by 30% due to his billing in one-hour increments. This sufficiently accounts for his unreasonable billing.

### c. No deductions for vague descriptions

Defendants insist a further lodestar reduction is warranted because Plaintiff's timekeeping records are "terribly vague." (Dkt. No. 152 at 13.) But Plaintiff's timekeeping records clear the *Hensley* threshold to "identify the general subject matter of his time expenditures." 461 U.S. at 437 n.12. Vague descriptions warranting a lodestar reduction are, for example, "research" or "reviewed letter from attorney." *See Schueneman v. 1st Credit of Am., LLC*, No. C 05 4505 MHP, 2007 WL 1969708, at *5 (N.D. Cal. July 6, 2007). In contrast, Plaintiff's counsel's entries are brief, but typically connected to a specific motion or court proceeding, allowing the Court to ascertain the "general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Therefore, the Court does not further reduce the lodestar for vague descriptions in the timesheet.

### C. Lodestar Multiplier

Based on reasonable hourly rates and hours reasonably expended, the Court determines the total lodestar of $48,708.00 for Mr. Goff and $84,258.90 for Mr. Cajina:

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Mr. Goff | $440/hour | 110.7 | $48,708.00 |
| Mr. Cajina | $465/hour | 181.26 | $84,285.90 |
| | | TOTAL | $132,993.90 |

Now that the Court has calculated the lodestar, it "determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Wengler*, 822 F.3d at 1099. These factors include:

> (1) the time and labor required,
> (2) the novelty and difficulty of the questions involved,
> (3) the skill requisite to perform the legal service properly,
> (4) the preclusion of other employment by the attorney due to acceptance of the case,
> (5) the customary fee,
> (6) whether the fee is fixed or contingent,
> (7) time limitations imposed by the client or the circumstances,
> (8) the amount involved and the results obtained,
> (9) the experience, reputation, and ability of the attorneys,
> (10) the "undesirability" of the case,
> (11) the nature and length of the professional relationship with the client, and
> (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. There is "a 'strong presumption that the lodestar is sufficient.'" *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010)). But a downward lodestar adjustment may be appropriate when a plaintiff achieved "limited success." *Hensley*, 461 U.S. at 436-37. Courts apply two steps when modifying an attorneys' fee award based on a limited degree of success: (1) "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?"; and (2) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434.

### 1.    *Hensley* Step One

"Once a district court concludes that a plaintiff has pursued unsuccessful claims that are unrelated to the successful claim, its task is to exclude from the calculation of a reasonable fee all hours spent litigating the unsuccessful claims." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 904 (9th Cir. 1995).

Although Plaintiff ultimately succeeded on a fraction of the claims and defendants named

16

in the original complaint, the Court is not persuaded Plaintiff's claims against Officer Sousa, Mr. Jones, and Sergeant Deleon were "unrelated to the claims on which [Plaintiff] succeeded." *Hensley*, 461 U.S. at 434. Claims are "unrelated" to the successful claims when they are "based on different facts and legal theories." *Id*. Here, Plaintiff's claims against all defendants arose out of a single set of events: the twist lock applied to Plaintiff and his subsequent handcuffing. (Dkt. No. 21 ¶¶ 15-17.) Although Officer O'Neill applied the twist lock that broke Plaintiff's arm, Officer Sousa was present. (*Id.* ¶¶ 15-16.) And the legal theory for Plaintiff's claims against Officer Sousa was closely related to the legal theory supporting claims against Officer O'Neill: both officers intentionally hurt Plaintiff and acted punitively during and after his arrest. (*Id.* ¶¶ 18-19.) The legal theory for Plaintiff's claims against Mr. Jones and Sergeant Deleon was failure to intervene, which necessarily is closely related to the claims against Officer Sousa and Officer O'Neill. (*Id.* ¶ 20.) Therefore, the Court finds Plaintiff's unsuccessful claims were not "unrelated to the claims on which [Plaintiff] succeeded." *See Hensley*, 461 U.S. at 434; *see also Schwarz*, 73 F.3d at 903 ("Thus, the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.' If they didn't, they are unrelated under *Hensley*.")

### 2.      *Hensley* Step Two

At step two the Court asks whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *Hensley*, 461 U.S. at 434. If the court concludes the prevailing party achieved "excellent results," it may permit a full fee award—that is, the entirety of those hours reasonably expended on both the prevailing and unsuccessful but related claims. *Id*. at 435; *Schwarz*, 73 F.3d at 905–06; *see also Medina*, 2009 WL 10710479, at *8 (noting that under the *Hensley* step two analysis the court should determine "what a competent lawyer would do to develop for trial the specific excessive force claims" for which the plaintiff ultimately prevailed). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's *rejection* of or *failure to reach* certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435 (emphasis added). In determining whether a plaintiff achieved "excellent results," "the district court should consider not only the monetary results but also the significant nonmonetary results

[the plaintiff] achieved for himself and other members of society." *Morales*, 96 F.3d at 365; *see also City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion) ("[A] civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.").

Plaintiff originally brought six causes of action against four defendants. (Dkt. No. 20.) The Court dismissed Plaintiff's claims against Mr. Jones. (Dkt. No. 38.) Plaintiff voluntarily dismissed his claims against Sergeant Deleon and voluntarily dismissed two causes of actions. (Dkt. Nos. 59, 65.) The Court granted summary judgment on three causes of action against Officer Sousa. (Dkt. No. 69.) Four causes of action against Officer O'Neill and one cause of action against Officer Sousa proceeded to trial. (Dkt. No. 138.) The jury found Officer O'Neill liable for excessive force, battery, and negligence, and awarded $10,000 in compensatory damages. (Dkt. No. 131.) The jury did not award punitive damages and found Officer O'Neill did not act maliciously, oppressively, or in reckless disregard for Plaintiff's rights. (*Id.*)

The Court finds the $10,000 award of compensatory damages against one of several individual defendants was not an "excellent result." Although Plaintiff is not left emptyhanded, during closing arguments Plaintiff asked for $400,000 to $700,000 in compensatory damages and punitive damages in an unspecified amount. (Dkt. No. 129 at 64:22-23, 65:23-66:5.) In light of Plaintiff's closing argument damages request, and the amount the jury ultimately awarded, as well as Plaintiff's lack of success as to the remaining individual defendants and several claims, it would be unreasonable to award the full lodestar.

But the Court also finds Plaintiff achieved a degree of non-monetary success. Attorneys' fees awards exceeding the amount of compensatory damages are appropriate when a plaintiff's success confers some public benefit, such as a change in policy that will prevent future harm or constitutional violations. *See, e.g.*, *Bravo v. City of Santa Maria*, 810 F.3d 659, 666–67 (9th Cir. 2016) (upholding attorneys' fee award over $1 million in a case where the jury awarded $5,000 in compensatory damages when the litigation identified a flaw in a police department's methods of determining custody status before seeking warrants); *Morales*, 96 F.3d at 364–65 (reversing and remanding attorneys' fee award of $20,000 for an unlawful arrest when the jury awarded $17,500

18

United States District Court
Northern District of California

in compensatory damages because "the verdict established a deterrent to the City, its law enforcement officials and others who establish and implement official policies governing arrests of citizens" and "served the public purpose of helping to protect Morales and persons like him from being subjected to similar unlawful treatment in the future."); *id.* at 365 ("the verdict 'constitutes a warning to law-enforcement officers not to treat civilians unconstitutionally.'")  Here, Plaintiff does not contend his success conferred a public benefit.  Nonetheless, similar to *Morales*, the jury's verdict establishes a deterrent to law enforcement officers and the City of Santa Rosa to prevent future unlawful treatment.  *See* 96 F.3d at 364-65.

So, for all the reasons explained above, the Court finds while Plaintiff achieved some positive results, he did not obtain "excellent results."  When the jury awards limited compensatory damages compared to the amount of damages sought and no public benefit, courts often apply a lodestar reduction between 50% and 95%.  *See Franco v. City of Victorville*, No. CV 07-7670 SVW (EX), 2009 WL 10668439, at *14 (C.D. Cal. Sept. 23, 2009) (collecting cases).  Because there is modest public benefit, a more modest lodestar reduction is warranted in this case. The Court therefore applies a downward multiplier of 15% to the lodestar set forth on page 16, for a total attorneys' fees award as follows:

| Attorney | Rate | Hours | Lodestar | - 15% | Total Fees |
|---|---|---|---|---|---|
| Mr. Goff | $440/hour | 110.7 | $48,708.00 | $7,306.20 | $41,401.80 |
| Mr. Cajina | $465/hour | 181.26 | $84,285.90 | $12,642.89 | $71,643.01 |
| | | | | TOTAL | $113,044.82 |

### 3.    The De Minimis Exception

Defendants also insist the Court should award "low or no fees" because "no reasonable person would pay $340,677.50 to win $10,000.00."  (Dkt. No. 152 at 15 (citing *Farrar*, 506 U.S. at 113.)  Under *Farrar*, "'nominal damages' cases in which the relief is de minimis are exempted from the general requirements that govern the calculation of attorney's fees, including the requirement that a lodestar first be calculated."  *Morales*, 96 F.3d at 362 (citing *Farrar*, 506 U.S. at 116-18), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997)).  This exception allows "the court to dispense with the calculation of a lodestar and simply establish a low fee or no fee at all," and "is limited to cases in which the civil rights plaintiff 'prevailed' but received only nominal damages and achieved only 'technical' success."  *Id.*  Plaintiff's compensatory damages

award of $10,000, while substantially less than what he sought, was not de minimis.  *See Morales*, 96 F.3d at 363 ("Morales' damages award of $17,500 in compensatory damages, while substantially less than what he sought, was not nominal.")  Nor was it technical.  Therefore, the *Farrar* exception does not apply.

## II.    Costs

"Under § 1988, the prevailing party may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quotation marks and citations omitted).  "Such out-of-pocket expenses are recoverable when reasonable." *Id.* (citations omitted).  Defendants bear the burden to "show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003).  "However, the presumption in favor of awarding costs to the prevailing party does not relieve that party from its obligation to itemize its costs with sufficient detail to establish that each expense is taxable." *Ancora Techs., Inc. v. Apple, Inc.*, No. 11-cv-06357-YGR, 2013 WL 4532927, at *2 (N.D. Cal. Aug. 26, 2013); *see also Ricoh Co. Ltd. Patent Litig.*, 661 F.3d 1361, 1368 (Fed. Cir. 2011) (applying Ninth Circuit law to deny costs to a prevailing party that "did not meet its burden" to itemize costs with specificity).

Plaintiff's motion for attorneys' fees (Dkt. No. 148) did not request any costs and did not include any evidence of costs.[3]  Instead, in his reply, Plaintiff requests $16,793 in costs, citing a bill of costs provided to Defendants on January 30, 2026.  The bill of costs lists Plaintiff's expenses, but provides no supporting documentation, such as receipts or invoices.  (Dkt. No. 149.)  And the reply is also unsupported by any evidence, even a declaration attesting to the accuracy of the bill of costs.  Defendants argue Plaintiffs waived their costs by failing to request them in their opening brief.  The Court agrees.

Further, even if not waived by failing to address costs until his reply brief, there is no evidence in the record supporting Plaintiff's request.  Because Plaintiff has not put forth any

---

[3] The same day he moved for fees, Plaintiff separately filed the Clerk's Office form for the Bill of Costs thus indicating he was only seeking the costs permitted by Federal Rule of Civil Procedure 54 and N.D. Cal. Civ. L.R. 54.  (Dkt. No. 149.)

<div style="margin-left:auto;">United States District Court<br>Northern District of California</div>

evidence supporting his request for costs, he has not met his burden to support his costs or demonstrate they are reasonable. *See Ancora Techs.*, 2013 WL 4532927, at *2; *Ricoh Co.*, 661 F.3d at 1368; *see also* N.D. Cal. Civ. L.R. 54-1(a) (stating the bill of costs "must be supported by an affidavit . . . that the costs are correctly stated, were necessarily incurred, and are allowable by law").

So, the Court does not award costs to Plaintiff.

<div align="center">

**CONCLUSION**

</div>

For the reasons stated above, Plaintiff's motion for attorneys' fees is GRANTED IN PART and DENIED IN PART. Plaintiff is awarded $113,044.82 in attorneys' fees.

**IT IS SO ORDERED.**

Dated: May 7, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge